## WILLIAM LOW *et al.*

*v.*

## SALOME C. GRAFF *et al.* Admrs. etc.

1. TRUST—*title taken to secure payment of loan.* Where a father holds an equitable title to land, the legal title being in another as a security for the payment of money, and the son advances the money due, and by arrangement takes a conveyance from the holder of the legal title, as a mere security for the repayment of the sum so advanced, which is not near the value of the land, the son will hold the legal title merely in trust and as a security, and the equitable title will remain in the father.

2. But if the son purchases the land and advances the money as a payment for it on his own account, he will take the complete title, both legal and equitable, notwithstanding he may verbally agree that his father may have the future use and occupation as long as he lives.

3. EVIDENCE—*parol, that a deed is a mere security.* Parol evidence is competent to show that a deed, absolute on its face, is taken merely as a security for the repayment of money advanced as a loan, but the evidence must be clear and satisfactory.

4. DECREE—*requiring a conveyance to heirs of a party.* On bill to enforce a resulting trust on payment of money due the holders of the legal title, a decree requiring such holders to convey "to the present legal heirs" of a party named, "who shall be individually named in said conveyance,"

etc., without finding who they are, imposes an unnecessary burden, in ascertaining who are such heirs, upon those required to convey.

5. CONVEYANCE—*description of grantees.* A deed to " the heirs at law of A B, late of, etc., deceased," will completely vest the legal title of the grantor in the heirs of A B, without naming them, leaving them, however, to establish their identity when questioned.

WRIT OF ERROR to the Circuit Court of Kane county; the Hon. SILVANUS WILCOX, Judge, presiding.

In the original bill in this case, which was filed on the 5th day of September, 1859, in the DeKalb circuit court, by William B. West, Joseph H. Maybourn and Hiram Barrett, complainants, against Lydia Low, William O. Bailey and John E. Bailey, defendants, the substantial allegations of fact were : About the year 1845 William Bailey, Sr., was in possession of a tract of land described in the bill, situated in DeKalb county, and, being desirous to obtain title to the land, he made an agreement with one Green, by which Green was to enter the land in his own name and retain the title until Bailey could repay the money necessary to enter it, together with accruing interest. This agreement was carried out. Green entered the land on the 9th of March, 1846, and retained the title until the 21st of February, 1850, when Bailey got his son, William, Jr., to advance the money necessary to pay Green, and take a deed for the land in his own name, which he was to hold until William, Sr., could repay him. The money was advanced by William, Jr., Green's debt paid, and the land conveyed to William, Jr., pursuant to the agreement. William, Jr., resided in Chicago, and exercised no supervision over the land. William, Sr., remained in possession of the land and improved and cultivated it during his lifetime. William, Jr., died intestate in August, 1850, leaving a widow, the defendant Lydia, and two minor children, the defendants William O. and John E. His estate was not administered upon, and no guardian was appointed for his minor children; but his widow, Lydia, took charge of the property, sold and disposed of it and paid his debts, in the same manner she would had she been invested with proper legal authority for that purpose.

About the 20th of February, 1854, William, Sr., paid the widow, Lydia, about $142 and took from her a warranty deed for the land, believing that this invested him with the complete title. About the 19th day of June, 1854, William, Sr., sold and conveyed the land to his son Frederick, one of the defendants. October 14, 1855, William, Sr., died. About October 10, 1856, Frederick executed a deed of trust on the land to William J. Hunt, trustee, to secure the payment of $109. October 20, 1857, Frederick, being indebted to the complainant Hiram Barrett, upon two notes for the sum of $642, also executed to the complainant J. H. Maybourn, as trustee, a deed of trust on the land to secure the payment of the same. Lydia Bailey, widow of William, Jr., subsequent to the making of the deed by her to William Bailey, Sr., intermarried with William Low. May 18, 1858, Frederick W. Bailey conveyed his interest in the land, subject to the two trust deeds, to George Bailey. December 18, 1858, William J. Hunt, trustee under the first described trust deed, sold the land, as trustee, to the complainant William B. West, who paid said Hunt the amount secured by said deed of trust, and Hunt executed and delivered to him a deed for the land. At the time Frederick W. Bailey became indebted to Barrett, he represented himself to be the owner of the land, that his title thereto was valid, and exhibited what purported to be an abstract of title, showing that he had title to the land, and Barrett relied upon these representations as true, and took from him the trust deed in good faith, and only recently, before the filing of the bill, discovered the defect in the title.

Complainants offer, in their bill, to pay to whomsoever the court shall direct, whatever shall be found due the minor heirs of William Bailey, Jr.

The prayer is, that the defendants may be forever barred from having or claiming any interest in, or title to, the land, or that they may be decreed to pay to the complainants their just indebtedness due upon the trust deeds, etc., that a guardian *ad litem* be appointed for the minor defendants, etc. Answer of guardian *ad litem* was filed for minor defendants,

and default was entered against the adult defendants; and at September term, 1862, of the court below, decree was rendered in favor of the complainants, which was subsequently reversed in this court. *Bailey* v. *West*, 41 Ill. 290.

Subsequent to the reversal the original bill was amended, making William Low, the husband of Lydia, a defendant. A supplemental bill was also filed showing that the complainant West had purchased of the complainant Barrett, all the interest of the latter in the suit, and in the notes secured by the trust deed of October 20, 1857; that complainant West had paid to the clerk of the court, pursuant to the former decree, $175.75 for the defendants, Lydia Low, William O. and John E. Bailey, and that said Lydia, William O., John E., or their attorney, received said money of the clerk. The reversal of the former decree is alleged, and also that William Low has been made defendant; that complainant West caused sale to be made on the trust deed given to complainant Maybourn, and himself became the purchaser of the land; that before the reversal of the decree, complainant West had contracted to sell the land to Joseph Nash, who was in possession of the land, making improvements on the same; that defendants have brought ejectment against Nash, for possession of the land, and that West and Nash have paid taxes on the land for seven successive years. The prayer is, that the suit be carried on in the name of West, and that he be decreed to have title to the premises.

The answer of William Low denies that William Bailey, Jr., advanced money to his father, William Bailey, Sr., to pay Green, and took a deed for the land as security; but alleges, on the contrary, that William Bailey, Jr., purchased the land of Green, and became its absolute owner, partly because he desired to provide his father with a home, and partly because he owned other land adjoining. The answer also puts in issue the other material allegations of the original and supplemental bills.

Answers were also filed by the guardian *ad litem* denying the material allegations of the bill, and requiring proof.

The joint and several answer of William Low and Lydia Low admit the formal allegations of the bill, but deny that William Bailey, Jr., held the land as a mortgage, but insist that his purchase and title were unconditional and absolute. They set up and rely upon the statute of frauds and perjuries as a bar to relief. Replications were filed to the several answers.

Several stipulations with regard to the parties, pleadings, and evidence to be admitted, etc., were filed, which it is unnecessary here to set out.

On the 17th of November, 1873, the venue was changed to the circuit court of Kane county, where, at its May term, 1875, final decree was rendered in favor of the complainants.

Among the recitals in the decree is this: " That by a former decree in this cause the amount due to the legal representatives of said William Bailey, Senior, from William B. West, on account of the said loan of $100, so made by William Bailey, Jr., to the said William Bailey, Sr., was found to be $175.75, which amount the said West was, by said decree, directed to pay to the clerk of the circuit court of DeKalb county, in satisfaction of said decree, and for the redemption of said land; that the said West thereupon paid said sum of $175.75 to said clerk, and that afterwards the said money was, by said clerk, paid to the solicitors or attorneys of the said defendants, Lydia Low, William O. Bailey, and John E. Bailey, and that said solicitors accounted for said money with their said clients; that said payments, so made by said West, and received by said defendants, ought to be and is considered to be full payment of the amount due the legal representatives of said William Bailey, for the redemption of said land; that said William Low has never acquired, and is not entitled to, any interest in said land."

The decree directs the execution of deed by Lydia Low, William O. Bailey and John E. Bailey, and that in default the master in chancery execute it.

The other facts sufficiently appear in the opinion of the court.

Mr. R. L. DIVINE, for the plaintiffs in error.

Mr. J. H. MAYBOURN, for the defendants in error.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The first and principal question is, did the deed from Green to William Bailey, Jr., invest him with the legal and equitable title to the land, or did it invest him with the legal title only, in trust, to secure the repayment to him from William Bailey, Sr., of the money he paid to Green? This depends entirely on the intention of the parties at the time the deed was made. If William Bailey, Jr., advanced the money as a loan to his father, then he took but the naked legal title, and the equitable title was in his father; but if he bought the land and advanced the money as a payment for it, on his own account, whatever may have been intended and agreed as to the future use and occupation of the land by his father, he took the complete title, both legal and equitable.

We have, with as much care as our time would allow, gone through all the evidence and given to it such deliberate consideration as, in our opinion, the proper determination of its effect requires; and our conclusion is, the money advanced by William Bailey, Jr., in payment of the debt due Green, was a loan from him to William Bailey, Sr., and that he took the title to the land merely to secure the repayment of the sum thus loaned.

William Bailey, Sr., commenced residing upon and improving the land in 1845, while it belonged to the Government. When Green entered it in 1848, although he took the title in his own name, there is no question but that he entered it for William Bailey, Sr., and held the title simply as security for the purchase money. There is not a particle of evidence that William Bailey, Jr., ever manifested, prior to his obtaining the title to the land, any desire to purchase it. It would have been unnatural, that, as an affectionate and dutiful son, he should have desired to do so. His father was poor, and this was all the home he had. His labor, and that of other mem-

bers of the family, had reduced much of it to cultivation, and given it, as we infer from the evidence, considerable value beyond what it would have had in its wild state, and much beyond the amount of Green's debt. The son was doing a moderately profitable business, and it is most natural that he should have been anxious to help his father secure his home, especially as it could be done without any prospect of ultimate loss. All the circumstances tend to support the evidence of Hopkins, a near neighbor to William Bailey, Sr., who was present when the money was advanced by William Bailey, Jr., and who heard and details all that passed between them. He is, apparently, disinterested, and nothing appears to shake our confidence, either in his intelligence or his integrity. He says he was present when William Bailey, Sr., and William Bailey, Jr., called on Green; thinks it was in the winter of 1850. His language, as found in the abstract, then proceeds as follows: " Bailey, Sr., and I went in with wheat; the old gentleman called on Green and paid up the interest on the money, out of his load of wheat, and William Bailey, Jr., paid $100 to Green, and Green gave him a deed to that piece of land (describing it); I heard the conversation of Bailey, Sr., and Bailey, Jr.; old Mr. Bailey agreed with his son that the son should take a deed of the land in his own name, and when the old gentleman should pay the $100 back, he was to have a deed of it again. The old gentleman told William that he was willing to pay interest on the money; William's reply was, 'No, father, you have paid out a great deal of money for me to learn my trade, and when you pay me the $100 I will give you the deed; it is all I ask.' We then went to Green's and he executed the deed. No writings were ever made, that I knew of, between the old man and his son; there was nothing done about writing. William offered to give writing to reconvey. The old man said he did not want any. He said, 'your word is good enough, and Hopkins is a witness.'" He further says, that on various occasions he heard William, Jr., speak of his intention to reconvey the land to his father when he repaid him the $100.

The evidence of the defendant Lydia Low, even if it shall be conceded to be competent, we attach but little importance to. Her recollection does not seem to be very distinct as to the details of the agreement between William Bailey, Sr., and her husband, William Bailey, Jr.; and her conduct in receiving, as she admits she did, shortly after William Bailey, Jr's., death, $100 on account of the land, and conveying it by what she then supposed and intended was a sufficient deed, to William Bailey, Sr., strongly tends to show that she did not then understand the land belonged to her husband absolutely, but that it was held by him merely to secure the payment of the $100.

Burr's evidence relates simply to occasional casual conversations, had many years before, with William Bailey, Sr., in regard to the land. In such conversations, there is always great liability to misapprehension, resulting from carelessness or want of fullness of expression in the speaker, and imperfect hearing or comprehension by the hearer. There was no reason why Burr should be informed with precision in regard to the matter, and the conversations he alludes to were loose statements, made in a general way. In one of them, he says William Bailey, Sr., told him that his son William had bought the land of Green, and he was to have the privilege of occupying it as long as he lived, or, if he ever got able, he was to have the privilege of paying his son William and keeping the land; " and said when his son Frederick, or ' our Fred.,' as he expressed it, gets a little bigger, he thought he should be able to pay for it;" and that he further added: " Whether I am ever able to pay for it or not, I have got shut of the big interest, and I shall have a home, for William will do just as he says."

In this there is nothing which can be held to be sufficient to disprove, or even weaken the effect of the clear and explicit evidence of Hopkins, as to what the actual agreement was. The statements manifestly relate rather to what the old gentleman understood to be the probable ultimate result of the agreement, than to its actual terms. And it does not at all militate against the evidence of Hopkins, that the old gentleman felt somewhat doubtful of his ability to redeem, and supposed, in

that event, the land would go to his son, or, rather, that his son, having the legal title, was owner, and that his right was a mere option to redeem.

The evidence of Ann Bailey and Charlotte Bateman, daughters of William Bailey, Sr., and sisters of William Bailey, Jr., fully and completely corroborates Hopkins. Although thus related to the parties, they have no pecuniary interest in the suit, and we perceive no sufficient reason to doubt the honesty of their motives in testifying. Their opportunities to know that of which they speak were such as to leave no reasonable doubt of their understanding it; and we must either give credence to what they say, or impute to them wilful and deliberate falsehood. It is true, in Mrs Bateman's evidence there are some discrepancies in dates, localities, etc.; but these are liable to occur, after the lapse of years, with the best of memories, and they are, in the present instance, so immaterial in character that they do not affect the substantial portions of her evidence.

It is, moreover, shown that William Bailey, Sr., after the transaction with Green and his son William Bailey, Jr., continued to reside upon the land and improve and cultivate it as he had before. The son paid no taxes on it, and gave no attention to it, further than to make such filial inquiries after his father's prosperity as was natural, aside from any special interest in the property. And the fact of William Bailey, Sr., paying the widow, Lydia, $100, after the death of William Bailey, Jr., and taking from her a deed for the land, is another strong circumstance showing that Hopkins' version of the transaction was understood by William Bailey, Sr., to be as the transaction was.

To establish a trust of this character, it is undoubtedly essential that the evidence shall be clear and satisfactory, but when this evidence is all considered, it is, to our minds, clear and satisfactory; and the case is, in principle, identical with *Coates* v. *Woodworth,* 13 Ill. 654, and *Boyd et al.* v. *McLean,* 1 Johns. Ch. 582.

The next point urged against the decree below is, that it finds the $175.75, directed by the former decree to be paid to the clerk, in redemption of the land from the claim of the heirs of William Bailey, Jr., was sufficient to satisfy their claims, and William Low, not being a party to that decree, could not share in the money.

The first decree was reversed, because William Low was not a party to it. It did not then appear whether the deed from his wife, Lydia, to William Bailey, Sr., was made before or after their marriage; and it was said in the opinion (see 41 Ill. 292): "Her separate deed, after her marriage with Low, did not transfer her title to William Bailey, Sr. Of this conveyance, there seems to be no evidence in the record, but the court below finds, in the decree, that Lydia Low had so conveyed the premises. After her marriage, a deed from her without her, husband's uniting in its execution, could convey no title. It is true, that in another part of the decree, there is a recital that Lydia Bailey had quitclaimed the land to William Bailey, Sr. Which of these recitals is true, we are unable to determine, in the absence of all the evidence. If the latter is true, then the release of her interest in the land would be good, if the elder Bailey was the equitable owner in fee; otherwise it would not affect her interest, as she could not convey her dower before assignment."

William Low has now been made a party, and has had "his day in court," and it is now shown that William Bailey, Jr., held the land only as security for the payment of a debt, while William Bailey, Sr., was the equitable owner in fee; and that the conveyance by Lydia to William Bailey, Sr., was made before her marriage with William Low, so that William Low did not have a particle of interest in the $175.75, paid to the clerk. It belonged exclusively to William O. and John E. Bailey, the heirs at law of William Bailey, Jr.

The remaining objection is, that the decree provides "that Lydia Low, William O. Bailey and John E. Bailey, make and execute, or cause to be made and executed, and delivered to said complainants, within ninety days from this day, a deed of

conveyance, conveying to the present legal heirs of said William B. West, *who* shall be *individually named* in said *conveyance,* all the right," etc.; and it is insisted that Lydia Low and William O. and John E. Bailey have no means of knowing who are the present legal heirs of William B. West, and that it is, therefore, impossible for them to comply with the decree.

By a stipulation in the case, the bill was dismissed as to Hiram Barrett and Joseph Maybourn, and it was also afterwards stipulated that William B. West had died intestate, since the pendency of the suit, and the present complainants, Graff, West and Ravelin, are his administrators; and no objection was taken in the court below, or is now urged, on account of a want of necessary parties complainant.

The portion of the decree directing the deed to be executed to the heirs at law of William B. West, *by their individual names,* is hardly warranted by anything in the record, and imposes an unnecessary burden and responsibility in ascertaining and determining who are such heirs, upon those required to make the deed. But we see no necessity to reverse and remand the cause on this account. A deed to "The heirs at law of William B. West, late of, etc., deceased," will completely vest the legal title in the proper parties, leaving the burden upon those claiming thereunder to establish their identity when it may be questioned. The decree will, therefore, be modified, by striking out the words, "*who shall be individually named in* said conveyance," and affirmed.

*Decree modified and affirmed.*