# Pancake *versus* Cauffman.

114  113
162  520
114  113
168   96

1. To convert a deed absolute on its face into a mortgage by parol evidence it must be clear, precise, indubitable, sufficient to satisfy the mind of a chancellor, otherwise it is error to submit it to the jury.

2. A *bona fide* purchaser of real estate for value without notice cannot be affected by a parol defeasance of his grantor whose deed absolute on its face would thereby be converted into a mortgage.

May 24th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.

ERROR to the Court of Common Pleas of *Blair county* : Of July Term 1885, No. 77.

Ejectment for one half of a lot of ground in the city of Altoona, brought by Mary Ann Cauffman against Elizabeth Pancake. Plea, not guilty.

The facts as they appeared on the trial before DEAN, P. J., sufficiently appear in the opinion of the Supreme Court.

The defendant requested the court to instruct the jury, *inter alia*, as follows :

2. The evidence is not sufficient to satisfy a chancellor of the existence of a mortgage, and the evidence, therefore, is not sufficient to be submitted to the jury on that point.

Answer. This is denied ; the evidence is for you, as we have submitted it to you. (First assignment of error.)

3. The defendant being a *bona fide* purchaser for value and

4 AMERMAN—8

having paid the purchase money to Good, is not affected by the parol defeasance, or trust in favor of the plaintiff, if there was a trust, unless she had notice of it; and there is no evidence of any notice in this case, and the verdict must be for the defendant.

Answer. This point is denied. (Second assignment of error.)

4. The undisputed evidence being that the plaintiff, knowing that Mrs. Pancake had purchased, permitted the said Mrs. Pancake, the defendant, to take possession of the property without objection, and knowing the defendant was living in the property, permitted her to occupy it without objection for twenty years or thereabouts, the plaintiff is estopped from asserting a claim of title or an equity as against the defendant.

Answer. This point is denied. The significance of these facts as evidence on the question whether or not the deed, absolute on its face, is a mortgage, we leave to you; but that these facts would be an estoppel to the claim of the plaintiff, even if believed, we deny. (Third assignment of error.)

5. If the jury find that the deed from the plaintiff to Jacob Good was accompanied by a parol defeasance which constituted it a mortgage, and that the defendant had notice thereof, the defendant, in addition to the mortgage debt, is entitled to be allowed for the repairs and improvements put on the property and the taxes and insurance paid on the same from the date of the purchase by Jacob Good until this time.

Answer. We decline to affirm this point. (Fourth assignment of error.)

6. On the whole case, the jury is instructed to find for the defendant.

Answer. This we deny; it is undisputed that Mrs. Tinker was in possession under Mrs. Cauffman; and if you so find that fact, then you must further find that the defendant, Mrs. Pancake, had notice of that which she might have known had she inquired—that she was there as the tenant of Mrs. Cauffman. (Fifth assignment of error.)

Verdict for the plaintiff and judgment thereon, whereupon the defendant took this writ, assigning for error the answer of the court to the above points.

*Daniel J. Neff*, for plaintiff in error.—1. The evidence that the deed from Mary Ann Cauffman to Jacob Good, dated June 10th, 1859, was a mortgage, was not " clear, precise and indubitable," and should not have been submitted to the jury: Rowand *v.* Finney, 15 Norris, 199; Plummer *v.* Guthrie, 26 P. F. S., 458; Stewart's Appeal, 2 Out., 384; Burger *v.* Dankel, 4 Id., 118; Nicholls *v.* McDonald, 5 Id., 514.

[Pancake v. Cauffman.]

2. Mrs. Pancake being a *bona fide* purchaser, without notice of the alleged secret equity, or parol defeasance, is not affected thereby. It is admitted there was no actual notice, and the learned court below so instructed the jury. But it was contended that the possession of Mrs. Cauffman was constructive notice, and the jury were so instructed: Morrow *v.* Souder, 3 Phila., 114; Leach *v.* Auspacher, 5 P. F. S., 81; Moyer *v.* Schick, 3 Barr, 247; Scott *v.* Gallagher, 14 S. & R., 333; Rowe *v.* Reame, 14 W. N. C., 294.

The notice, if implied, must be of such a character that a failure to make inquiry would be gross and culpable negligence: Bank of Phillipsburg's Appeal, 10 W. N. C., 265.

3. If ever there was a clear case of estoppel, this seems to be one. Mrs. Cauffman lived on the adjoining property at the time Mrs. Pancake purchased, and has lived there ever since; yet knowing she had purchased, Mrs. Cauffman never gave any notice that she had any interest; she permitted Mrs. Pancake to live there for over twenty years, claiming the property as her own, paying the purchase money, exercising every act of ownership over the property, expending money in making improvements and repairs, paying taxes and insurance; yet she remained silent. By this long silence and acquiescence Mrs. Cauffman is estopped from asserting title as against Mrs. Pancake: Carr *v.* Wallace, 7 Wr., 400; Woods *v.* Wilson, 1 Id., 384; Commonwealth *v.* Moltz, 10 Barr 527; Morgan *v.* R. R. Co, 6 Otto, 720; Chapman *v.* Chapman, 9 P. F. S., 219; Doe *v.* Ohoer, 2 Smith's Leading Cases, 653.

*Samuel S. Blair*, for defendant in error.—Mrs. Pancake was not a *bona fide* purchaser without notice. The defendants' testimony shows that Good sold by articles of agreement with her in December, 1861, and that the deed was made a month or two after she was in possession; that she gave a judgment note for the purchase money which was never entered of record, but which was paid. It does not appear when it was paid, if it ever was paid. For aught that appears it might not have been paid till after this suit was brought. A purchaser who claims protection as being *bona fide* and without notice must show payments of the purchase money before notice, for the transaction is not complete until the purchase money is paid: 1 Dan. Chan. Pra., 677.

*Bona fide* payment is an affirmative fact peculiarly within the knowledge of the party making such payment or claiming advantage from it. It is easy, therefore, for him to prove it, while on the other hand the opposite party who is a stranger to the transaction might have insuperable difficulty in proving a negative: Lynch *v.* Lloyd, 5 Cas., 416.

There was actual notice.

It is clear that the possession of a tenant is notice of his title as tenant and also of the title of his landlord under whom he holds: Hottenstein *v.* Lerch, 8 Out., 461.

Mr. Justice GREEN delivered the opinion of the Court, October 4th, 1886.

This is an extraordinary case. It is an action of ejectment to enforce an alleged equity of redemption, brought by one who had conveyed the fee simple to the land in question by an absolute deed, upon the ground that it was subject to a parol defeasance. The defendant is a purchaser for value from the grantee of the plaintiff. The deed from Mrs. Cauffman, the plaintiff, to Good, her grantee, was made in 1859, and the deed from Good to Mrs. Pancake, the defendant, was made in 1862. After her purchase of the property Mrs. Pancake sent word to the tenant in possession that she had bought it and wanted to move in, and that the tenant must move out by the time named. On the day appointed Mrs. Pancake moved in and took possession, the former tenant left, after a little demur on account of another house he had rented not being quite ready, and from that day to the day of her death, about twenty years later, Mrs. Pancake continued to live on the premises in quiet and uninterrupted possession. At the time Mrs. Pancake moved in Mrs. Cauffman lived in the adjoining house, and has continued to live there ever since. According to the testimony of Mrs. Cauffman and her daughter, and son-in-law Huss, when Mrs. Tinker, the former tenant, moved out she left the key of the house with Mrs. Cauffman, and on the same day the key being demanded by a son of Mrs. Pancake, it was given to him. This is denied by the son, who says the key was in the door; but it is not very material since in point of fact all three of the plaintiff's witnesses, including the plaintiff herself, agree in saying that the key was delivered, or, as they say, thrown to him and taken by him. During the whole twenty years Mrs. Cauffman and Mrs. Pancake lived by the side of each other in adjoining houses, and after a year, upon visiting terms, yet Mrs. Cauffman, neither at the time Mrs. Pancake took possession nor ever afterwards, informed the latter that she claimed title to the property, or that the deed to Good was or was intended to be a mortgage, or anything other than what it purported to be ; she never, either before or after the deed to Mrs. Pancake from Good, made any demand upon Good for a re-conveyance of the property or offered to pay him back the money which she says he loaned her, or in any manner asserted her claim of title, either to Good or Mrs. Pancake, until she brought the

present action. In the meantime Mrs. Pancake made considerable repairs and improvements upon the property, costing, according to the testimony of her son, about $1,500 in the aggregate, part of which was the erection of another building. No objection was made to this by Mrs. Cauffman, nor was any notice of her claim of title given. During at least part of the time while Good held the title Mrs. Cauffman paid rent, or rent money, to Good. He says she rented the property from him and paid him rent for several months, and she says she paid him the rent money she received from the tenants and took receipts for it, but did not produce the receipts, saying she had lost or destroyed them. The following extract from Mrs. Cauffman's testimony indicates the undisputed character of most of the foregoing facts: " Q. You have lived in the property adjoining the Pancake property ever since that time, have you? A. Yes, I have been there. Q. That is you lived on one half of the property and Mrs. Pancake on the other side? A. Yes; I am making my home with Huss. Q. And he lived on the adjoining property? A. Yes, sir. Q. Were you living there at the time Mrs. Pancake lived in the property? A. Yes, I was, and you saw me there, too; I was sick at the time, not able hardly to come down stairs; I didn't know you; I didn't know who you was. Q. Do you know how much rent you paid to Mr. Good? A. Oh, I can't tell you. Q. You took no receipts for the money you paid? A. Oh, I had receipts you know; he gave me receipts; I told you they were lost; I think I burned them. Q. Then you haven't any of these receipts now? A. No, sir; I haven't got any of them. Q. Did you ever ask Mr. Good to convey this property to you—that is, to make you a deed for it? A. No, I don't think I did. Q. You never asked him to give you that property back? A. Well no, I don't believe I did. Q. Can you tell near about how long you lived there? A. Since he sold it? Q. Yes, ma'am. A. Well, Pancake—about twenty-one years, I guess; no, I guess about twenty years before I said anything about the property, you know. Q. You knew at the time Mrs. Pancake was living in there she had bought the property? A. Well, yes, of course she said she bought it."

Conceding that there is a sufficiency of testimony to prove that the original transaction between Mrs. Cauffman and Good was a loan and not a sale, there was not a particle of testimony in the entire case to prove any kind of actual notice to Mrs. Pancake that the conveyance to Good was of such a character. The only kind of notice with which it is sought to charge her is the constructive notice which flows from the fact that some one other than Good was in possession. But

[Pancake *v.* Cauffman.]

the whole effect of that fact is destroyed by the entirely un-disputed fact that as soon as Mrs. Pancake demanded posses-sion it was given to her by the person who held it. She claimed possession as the alienee of Good, and when the per-son holding possession yielded it in response to that demand, how could she infer that the holding of that person was ad-verse to Good's title? In truth the inference would be pre-cisely the opposite. In addition to this the plaintiff and two of her witnesses testified that she had the key of the house on the day Mrs. Pancake moved in, and gave it up on demand of her son. Having done this, how could Mrs. Pancake infer that Mrs. Cauffman claimed title as owner, and what duty of inquiry rested upon her the disregard of which would imperil her honestly acquired title? Why should she inquire for an adverse title when no adverse title was interposed, or made to appear, against her in any manner whatever? What occasion was there for her to inquire for anything, or from anybody? She held her perfect paper title; when she went to take posses-sion it was given to her; what more was she to do? Neither then nor for twenty years after was there even a whisper to her, so far as appears in the evidence, of any adverse title in Mrs. Cauffman, and that too, although Mrs. Cauffman was her next door neighbor during every day of that entire period. Mrs. Cauffman says it was about a year before Mrs. Pancake came in to see her, implying that after that neighborly inter-course existed between them, yet she does not say or intimate that she ever informed Mrs. Pancake of her claim or made the slightest allusion to it. Moreover, Mrs. Cauffman paid rent for the premises to Good during a part, if not the whole, of the time he held the title, and we must infer that if inquiry had been made it would have developed that fact. We can-not agree that there was either actual or constructive notice of plaintiff's title either at the time of the sale to the defend-ant or when she took possession, or for twenty years after-wards. The case is therefore fatally defective upon the merely technical ground of want of notice to an innocent purchaser for value. But it is equally defective upon other grounds. It is not possible to regard the case as one in which the evidence of mortgage is clear, precise and indubitable. The plaintiff and her daughter and son-in-law testified to facts tending to show a loan, but none of them testified to any distinct agreement to re-convey, or any actual payment, or offer to pay, the whole of the loan. The purchaser Good denies most emphatically that there was any loan or any agreement to re-convey.

The subscribing witness who was present at the execution of the deed to Good, testified that he heard nothing said about

[Pancake v. Cauffman.]

the deed being given as a security for money loaned, and the substance of Barry's testimony is that Good was willing to make a loan at 10 per cent., but he does not say what the final agreement of the parties was. In this state of the testimony, the plaintiff admitting that she knew of the sale to the defendant, that she made no claim of title to the defendant, that she never asked Good to re-convey the property to her, that she surrendered the key of the house when the defendant demanded it, that she lived for twenty years in the next house to the defendant and acquiesced in her possession and her title during all that time without the slightest objection, and it being clearly proved and not contradicted that the defendant made valuable improvements upon the property, of which the plaintiff must have known, and it being also the undisputed fact that the plaintiff paid rent to Good, we cannot possibly regard the proof of a mortgage as either clear, precise or indubitable, even had there been clear and definite evidence of an agreement by Good to re-convey the property upon the re-payment of the money paid out by him, the facts of the voluntary surrender of the property to the defendant, the payment of rent to Good, and the very long acquiesence of the plaintiff in the defendant's title and possession without ever once asserting her present claim of title, are so entirely inconsistent, so utterly at war with any theory of mortgage, that they cast the gravest possible doubt upon the whole claim. There is not one word of explanation of the enormous delay of the plaintiff in asserting her claim. It is laches of the grossest character. There is however a very suspicious reason for asserting it at this late day in the fact of the large increase in the market value of the property, and in her rather frank admission that this way there would be some " money to go in." Sitting as judges in chancery we are not satisfied with the testimony in support of this claim. To our minds it is shocking, both to the moral and the judicial sense, to permit a recovery upon such a state of facts. We think the learned court below should have given a binding instruction to the jury to find a verdict for the defendant, and we reverse the judgment on the first, second, and fifth assignments.

Judgment reversed.