# CASES

## ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF NORTH DAKOTA

JOHN W. JASPER *vs.* ARTHUR H. HAZEN.

Opinion filed March 3rd, 1894.

**Findings of Fact—Review on Appeal.**

Under § 25, Ch. 120, Laws 1891, this court is required, upon appeal, to review questions of fact in cases tried by the court or referee, when exceptions to the findings are duly taken and returned. But this court will not try the case *de novo*. The findings below are presumed to be correct. Appellant must show error, and a finding based upon parole evidence will not be disturbed unless the error be made clearly to appear.

**Deed—Absolute in Form—When Proved a Mortgage.**

To support a finding that a deed absolute on its face was intended as a mortgage only, the evidence must be clear, convincing, and satisfactory, and of such a character as will leave in the mind of the chancellor no hesitation or substantial doubt. In reviewing questions of fact upon appeal, in this class of cases, the same strict rule must be applied by the appellate court.

**Evidence Sufficient to Sustain Finding.**

Evidence in this case examined, and *held* sufficient to warrant the trial court in holding that a deed absolute in form was in fact given as security only.

Appeal from District Court, Cass County; *McConnell*, J.

Action by John W. Jasper against Arthur H. Hazen. Plaintiff had judgment, and defendant appeals.

Affirmed.

N. D. R.—I

*Benton & Amidon,* (*Sumner Ladd* of counsel,) for appellant.

Equity ought to be extremely cautious in its consideration of parole testimony to show a deed in form a mortgage. *Andrews v. Ins. Co.*, 3 Mason (U. S.) 6. The evidence must be clear, convincing and equal in force to that upon which a deed will be reformed for mistake. *Kent v. Lasley*, 24 Wis. 654. A mere preponderance of proof is not sufficient. *Sloan v. Becker*, 34 Minn. 491; *McClellan v. Sanford*, 26 Wis. 595, 607. The burden rests upon the moving party of overcoming the strongest presumption arising from the terms of the written instrument. *Holland v. Blake*, 97 U. S. 624, *United States v. Maxwell Land Grant*, 121 U. S. 325, 381; *United States v. Budd*, 144 U. S. 154; *Meade v. Ins. Co.*, 64 N. Y. 453; *Ford v. Joyce*, 78 N. Y. 618; *Tufts v. Larned*, 27 Ia. 330; *Lynn v. Barkley*, 7 Ind. 69; *Stockbudge Iron Co. v. Hudson Iron Co.*, 102 Mass. 45; Story's Eq. Jur. § 157; 2 Pom. Eq. Jur. § 859. To convert a deed absolute on its face into a mortgage by parole testimony, such testimony must be clear and specific, of a character such as will leave on the mind of the court no hesitation or doubt. Lances Appeal, 112 Pa. St. 456; *Henley v. Hotaling*, 41 Cal. 22; *Tilden v. Streeter*, 45 Mich. 533; *Johnson v. Van Velsor*, 43 Mich. 208; *Kercheval v. Doughty*, 31 Wis. 476; *Townsend v. Peterson*, 21 Pac. Rep. 619; *Satterfield v. Malone*, 35 Fed. Rep. 445; *Munger v. Casey*, 17 At. Rep. 36; *Pierce v. Traver*, 13 Nev. 526.

*M. A. Hildreth,* (*Chas. A. Pollock,* of counsel,) for respondents.

The rule which excludes parole testimony to contradict or vary a written instrument has reference to the language used by the parties, it does not forbid an inquiry into the object of the parties in executing and receiving the instrument. *Brick v. Brick*, 98 U. S. 516; *Hughes v. Edwards*, 9 Wheat 489; *Pierce v. Robinson*, 13 Cal. 116. Parole evidence is admissable to show that an absolute conveyance is in fact a mortgage. Jones on Morts. § 285; *Russell v. Southard*, 12 How. 139; *Peugh v. Davis*, 96 U. S. 332; *Babcock v. Wyman*, 19 How. 289. The intention of the parties is the true test

to be gathered from the circumstances surrounding the transaction. *Pugh* v. *Davis*, 96 U. S. 332; *Montgomery* v. *Spect*, 55 Cal. 352. The findings were justified by the evidence. *McMillan* v. *Bissell*, 29 N. W. Rep. 737; *Allen* v. *Fogg*, 23 N. W. Rep. 643; *Manf. Bank* v. *Rugee*, 18 N. W. Rep. 251; *Madigan* v. *Meade*, 16 N. W. Rep. 539; *Rockwell* v. *Humphrey*, 15 N. W. Rep. 394; *Ingwald* v. *Atwood*, 5 N. W. Rep. 160; *Stark* v. *Redfield*, 9 N. W. Rep. 168; *Gay* v. *Hamilton*, 33 Cal. 686; *Raynor* v. *Lyons*, 37 Cal. 452; *Taylor* v. *McLain*, 64 Cal. 514.

BARTHOLOMEW, C. J. This case is before us for the third time. Upon the first appeal a verdict of a jury in respondent's favor was set aside upon the ground that the case should have been tried in equity, and not at law. The case is reported in 1 N. D. 75; 44 N. W. 1018, where a full statement of the issues is given, which need not be here repeated. The case was again reversed, on a question of pleading, in 2 N. D. 401; 51 N. W. 583. It comes before us again upon the merits, judgment for respondent having been entered below upon findings of fact and conclusions of law. These findings are somewhat extended, and every issue made by the pleadings is found in respondent's favor. It is claimed that many of these findings are not supported by the evidence. A reference to the pleadings, as set forth in the former opinion, discloses that the plaintiff, who is respondent here, sought to compel the appellant to account for the value of certain property, real and personal, which it was claimed appellent held as trustee, *ex maleficio*, for respondent, and which he had wrongfully converted to his own use. It will also appear that appellant held the real estate, for the value of which it was sought to compel him to account, by a deed absolute on its face, but which respondent insisted was in fact given to secure the performance of an act which had long since been performed. It is thus apparent that, in considering the evidence necessary to establish appellant's liability in this case, two somewhat different rules of law must be applied. Liability for the value of the personal property may be established under what we may term the "general rule," while liability for the value

of the real estate can only be fixed under the strict rule to be hereafter considered.

Speaking now only of the personal property, the rule that the findings of facts of a trial court, like the verdict of a jury, will not be disturbed by an appellate court when they have substantial support in the evidence, has been so often announced, and is so familiar to the profession, that no authorities need now be cited in its support. But § 5237, Comp. Laws, re-enacted as § 25, Ch. 120, Laws 1891, in speaking of the powers of the Supreme Court on appeal, says: "Any question of fact or of law decided upon trials by the court or by referee may be reviewed when exceptions to the findings of fact have been duly taken by either party and returned." To what extent this provision modifies or controls the general rule above announced is an interesting question that has never been directly passed upon by this court. Nor, so far as we can ascertain, was this provision ever construed by the Supreme Court of the late territory prior to its re-enactment by our state legislature. The provision was incorporated in the Laws of the Territory of Dakota in 1887; and *Waldron* v. *Railroad Co.*, 1 Dak. 351, 46 N. W. 456, and *Mining Co.* v. *Noonan*, 3 Dak. 189, 14 N. W. 426, both of which announce the general rule, were decided prior to that time. This same provision was enacted in Wisconsin in 1860. The first case arising thereunder was *Snyder* v. *Wright*, 13 Wis. 689. From that case, and from *Fisher* v. *Loan & Trnst Co.*, 21 Wis. 73, and *Garbutt* v. *Bank*, 22 Wis. 384, it is quite clear that the Supreme Court of Wisconsin felt itself compelled to pass, to some extent at least, upon questions of fact, in cases of this character. The construction placed upon the statute by that court ought to be binding upon us, as we adopted the law after such construction. The difficulty lies in determining just how far that learned court intended to go. That the statute ingrafted a change upon the former practice is certain. To review is to re-examine judicially. Yet we are constrained to believe that the legislature did not intend a "trial *de novo*," in the usual acceptation of that term. It did not intend that this court should take up the parole evidence

as preserved in the bill of exceptions, and pass upon it without any reference to the decision below. Rather, it intended—and such, we think, is the effect of the Wisconsin decisions—that, when a finding of fact made by the trial court was brought into this court for review upon proper exceptions, it should come like a legal conclusion, with all the presumptions in favor of its correctness, and with the burden resting upon the party alleging error of demonstrating the existence of such error. He must be able to show this court that such finding is against the preponderance of the testimony, and where the finding is based upon parole evidence, it will not be disturbed, unless clearly and unquestionably opposed to the preponderance of the testimony. *Randall* v. *Burk Tp.*, (S. D.) 57 N. W. 4. Of the probative force and value of depositions and documentary evidence, this court may be in as good situation to determine as the trial court; and when the finding is based upon this character of evidence, and it reasonably appears to this court, upon a full examination thereof, that the finding is against the weight of the evidence, we think it would be our duty, under the statute, to disturb the finding. But every practitioner of extended experience knows how absolutely essential it is, in order to ascertain the truth from parole evidence, that the tribunal who is to pass upon the evidence should see the witness upon the stand. The printed page containing the evidence gives, oftentimes, a radically different impression from that made at the hearing. The opportunity of observing the witnesses, and their interest or lack of interest in the case, their prejudices and passions, their mental capacities and powers of observation and memory, and the use they have made of these powers, their entire deportment on the stand, and conduct under cross-examination,—these and many other circumstances that attend personal observation,—are undoubted auxiliaries in ascertaining truth. Of all these helps this court is deprived, while the trial court possesses them fully. It is obvious that, if these things be disregarded, mistakes will be made, and injustice be done. As the finding of fact based upon parole evidence comes to us with all

presumptions in favor of its correctness, we must, in reaching our conclusions, throw into the balance in support of the finding, not only the full effect of the printed evidence in the bill of exceptions, but also the full effect of the inferences and impressions that might reasonably and legitimately be drawn from personal observation of the witnesses; and it is only when the scales unmistakably incline the other way, when the finding is thus weighed, that we are warranted in disturbing it. Applying these principles to the evidence in this case bearing upon appellant's liability for the value of the personal property, and it becomes so clear that the findings cannot be disturbed that it would be a waste of time to analyze the testimony.

More difficult questions confront us when we turn to the other branch of the case, and apply a different rule of law to the evidence. As already stated, appellant's liability for the value of the realty depends upon whether or not a deed absolute on its face was intended to operate as such, or as security only. The rule which admits parole testimony to show that a deed absolute in terms was in fact intended only as security for the performance of some act is too well established to require authorities in its support. Nor do learned counsel in this case greatly differ as to the character and quantity of proof required in such cases. The presumption that an instrument executed with the formality of a deed, or a contract deliberately entered into, expresses on its face its true intent and purpose, is so persuasive that he who would establish the contrary must go far beyond the ordinary rule of preponderance. To demand less would be to lose sight of this presumption, which is one of the strongest disputable presumptions known to the law. Hence, courts have, with great uniformity, in this class of cases, required the proof that should destroy the recitals in a solemn instrument to be clear, specific, satisfactory, and of such a character as to leave in the mind of the chancellor no hesitation or substantial doubt. *Eames* v. *Hardin*, 111 Ill. 634; *Gassert* v. *Bogk*, (Mont.) 19 Pac. 281, affirmed in 149 U. S. 17, 13 Sup. Ct. 738; *Locke* v. *Moulton*, 96 Cal.

21; 30 Pac. 957; *Ensminger* v. *Ensminger,* 75 Iowa, 89, 39 N. W. 208; *Howland* v. *Blake,* 97 U. S. 624; *Kent* v. *Lasley,* 24 Wis. 654. But while counsel agree, practically, that the strict rule thus announced must be applied by the trial court, they disagree entirely as to the rule that should be applied in this court. Counsel, at the request of the court, have filed supplemental briefs upon this question, the great value of which, and the aid that we have received therefrom, we desire here to acknowledge. The statute we have already considered has no direct bearing upon this question, except so far as it requires us to pass, to any extent, upon the weight of testimony. Having once decided that it is our duty to review the evidence, as already indicated, then, whether we apply the rule that requires a mere preponderance, or the rule that requires that clear and convincing testimony that leaves no substantial doubt, is left untouched by the statute.

Respondent contends—and his first proposition is correct—that the case comes to this court with the presumption that chancellor applied the proper rule at the trial. He then argues that this court ought not to attempt to control the conscience of the chancellor, and ought not to say that he was not convinced, or ought not to have been convinced, beyond any substantial doubt, by a certain amount of admittedly competent evidence, when he himself says he was so convinced, and that if he was so convinced the rule was met, and the findings should stand, unless reversible under the general rule that they are against the clear weight of the testimony. The position is not without plausibility. It has the support of the eminent Supreme Court of California. *Brison* v. *Brison,* 90 Cal. 323, 334, 27 Pac. 186; *Mahoney* v. *Bostwick,* 96 Cal. 53, 58, 30 Pac. 1020; and *Penney* v. *Simmons,* (Cal.) 33 Pac. 1121. Possibly, such is the rule in Texas. See *Ullmann* v. *Jasper,* 70 Tex. 446, 7 S. W. 763. The case of *Ensign* v. *Ensign,* 120 N. Y. 655, 24 N. E. 942, is cited by respondent, but does not support his contention, as an examination of the case and of the New York statute will disclose. Section 1337, N. Y. Code Civ. Proc. 1876, in defining the power of the court of appeals in cases taken

to that court on appeal, among other provisions, contains the following: "Except that a question of fact arising upon conflicting evidence cannot be determined upon such appeal unless when special provision for the determination thereof is made by law." And the next section provides for a review upon the facts in the court of appeals, when the general term of the Supreme Court has reversed, upon questions of fact, a judgment entered upon the report of a referee, or upon the decision of a court without a jury. And *In re Ross*, 87 N. Y. 514, where these statutes are fully explained, Judge Earle says that this latter provision is the only one giving the court of appeals power to review questions of fact depending upon conflicting evidence. This statement renders the language in *Ensign* v· *Ensign* readily understood, where the court says: "The referee's determination of the issue having been affirmed by the general term, this court cannot reverse, if there is any evidence tending to sustain the finding of fact on which the judgment rests." *Van Tuyl* v. *Insurance Co.*, 67 Barb. 72, cited by respondent, fairly supports his position. That was a case of reformation of contract. The statement is bald, and there is no discussion of the question. In the much later case of *Erwin* v. *Curtis*, 43 Hun. 292, the general term of the court discusses the point briefly. That was a case brought to declare a quit-claim deed to be a mortgage. The court cites the authorities which hold that the parole evidence, in such case, must be "clear, satisfactory, and convincing," and also the authorities which require the "triors of fact in civil cases to give a verdict to the party in whose favor the evidence preponderates." The court then says: "It is necessary for us, in reviewing the question of fact, as to whether this deed was proven to be a mortgage, to determine the rule governing us, and we hold it to be as stated in," etc., (naming the cases that announce the strict rule.) And the court adds: "With this conclusion in mind we have carefully examined the evidence bearing on the question, and all the circumstances surrounding the parties and the transaction, and we cannot say that there was error committed in the finding below." It is clear,

in this case, that the appellate court adopted for its own guidance, and enforced, the strict rule. In the California cases there is no discussion of the point we are considering. The court simply announces, in general terms, that it will apply the same rule of law to these exceptional cases that is applied to cases generally, and that, sitting as a court for the correction of errors of law, it will not disturb a finding which declares a deed absolute to be a mortgage, if such finding has any substantial support in the testimony. Nor do we find the question discussed anywhere, except the brief discussion in 43 Hun. But we do find in the courts of last resort in many of the states, and in the Federal Supreme Court, the strict rule has been unquestioningly adopted and enforced. We find courts saying, in this class of cases, that, if they could be governed by the preponderance of the testimony, their ruling would be in one direction, but as the law requires the evidence to be clear, convincing, and satisfactory, beyond substantial doubt, they are compelled to rule in the other direction. We find other cases where the trial court has held that a deed absolute on its face was not intended as a mortgage, and the appellate court says that the clear, convincing, and satisfactory evidence shows that it was so intended, and reverses the finding. Some of the cases cited below, as will be seen by inspection, come from states where the appellate court sits as a court for the correction of errors of law; only, in all appeal cases, and where the holding would seem to lead directly to the conclusion that, where the law requires a specific character of evidence to warrant a particular finding, to make such finding in the absence of such character of evidence was as much an error of law as to make a finding in an ordinary case supported by no substantial evidence. We cite the following cases, in all of which the strict rule has, in effect, been applied in the appellate court: *Howland* v. *Blake*, 97 U. S. 624; *Coyle* v. *Davis*, 116 U. S. 108, 6 Sup. Ct. 314; *Cadman* v. *Peter*, 118 U. S. 73, 6 Sup. Ct. 957; *Nevius* v. *Dunlap*, 33 N. Y. 676; *Devereux* v. *Sun Fire Office*, 51 Hun. 147, 4 N. Y. Supp. 655; *Case* v. *Peters*, 20 Mich. 298; *Vary* v. *Shea*, 36 Mich. 388; *Tilden* v. *Streeter*, 45

Mich. 533, 8 N. W. 502; *Reynolds* v. *Campbell*, 45 Mich. 529, 8 N. W. 581; *McMillan* v. *Bissell*, 63 Mich. 66, 29 N. W. 737; *Low* v. *Graff*, 80 Ill. 360; *Bartling* v. *Brasuhn*, 102 Ill. 441; *Newton* v. *Holley*, 6 Wis. 592; *Lake* v. *Meacham*, 13 Wis. 396; *Kercheval* v. *Doty*, 31 Wis. 477; *Harter* v. *Christoph*, 32 Wis. 246; *Lavassar* v. *Washburne*, 50 Wis. 200, 6 N. W. 516; *Meiswinkel* v. *Insurance Co.*, 75 Wis. 147, 43 N. W. 669; *Pancake* v. *Cauffman*, 114 Pa. St. 113, 7 Atl. 67; *McCall* v. *Bushnell*, 41 Minn. 37, 42 N. W. 545; *Bingham* v. *Thompson*, 4 Nev. 224.

We think these cases have gone upon the correct theory. It will not do to say that the strict rule is for the guidance of the trial court only. It is safe to say that there will always in this class of cases, be some evidence to support the plaintiff's claim, If, then, when the case reaches this court, we are conclusively bound to say that the chancellor correctly applied the strict rule of law, that fact requires us to say that the evidence conforms to the findings, and not the findings to the evidence. Moreover, it is this strict rule of law upon which the titles to real estate rest for protection. Remove it, and few titles would be secure. He whose title is assailed in this manner invokes the rule in his defense; and, if that rule is to be applied only in the trial court, then, in case of defeat, he can never bring his case to this court, because at the threshold, he must abandon the very essence of his defense. We think such a holding would, in effect, abrogate the rule. Trial courts, however learned and conscientious, are just as liable to make mistakes upon this point as upon others. We must be governed, in considering this branch of the case, by the rule that requires the evidence to be clear, convincing, and satisfactory. But, in applying this rule, we must be controlled by the same principles that control in applying the general rule. The case comes to us with the presumption in favor of the legality and correctness of the findings. Appellant must establish error, and, where a finding is based upon parole evidence, its error must clearly and unquestionably appear, or it will not be disturbed. This disposes of all preliminary questions, and leaves only the

consideration of the evidence bearing upon appellant's liability for the value of the realty.

What is the character of the proof in this case? At the time of the transaction, the respondent was a farmer, and a man of limited attainments; a German by birth; unable to read writing with accuracy, and unable to write, in English more than his name. Appellant was an energetic, experienced business man. He was an officer in a money loaning corporation, and, as such, had loaned respondent money, and taken a mortgage to secure the same on the land in controversy. It does not appear that the parties had been otherwise connected in business. On or prior to said March 20, 1885, respondent was arrested, charged with a felony. His preliminary hearing before the magistrate had been fixed for the subsequent day, and the respondent had been required to give a bail bond in the sum of $500 for his appearance. Under these circumstances, respondent applied to appellant to sign the bail bond as surety. The bond was signed by appellant, and the deed in question was executed. Respondent says the deed was executed to secure appellant against the liability of the bond. Appellant says it was a sale absolute, the consideration therefor ($500) to be retained by him until relieved from liability on the bond. It will be convenient to recite here that respondent appeared before the magistrate as required by the bond, and upon his preliminary hearing he was bound over to appear at the next term of the district court, and his bail fixed at $1,500 which he was unable to procure; and he remained in the county jail until in June following, when he was indicted, tried, convicted, and sentenced to a term in the state penitentiary, from which he was released in the spring of 1888. The evidence is presented in the abstract at great length, and, as was our duty, we have studied it carefully; and it is necessary to refer at some length to the portion thereof which bears directly upon the question of the character of this instrument. When Jasper first went to Hazen's office, on March 20, 1885, he was accompanied by one Ames, a deputy sheriff, who had him in charge. There was also present

one Clement, who was also an officer in the same corporation with Hazen. It is undisputed that at this first interview nothing was said about an absolute conveyance or a purchase. Jasper offered security, and was asked what security he could give. After Jasper stated the security, Mr. Hazen declined to accept it or to sign the bond, whereupon Jasper and the officer started for the jail. When they had gone about one block, Hazen called them back. Here we meet the first really materially conflict in the testimony. Jasper says that upon their return they went into the office, and Hazen stated that he had concluded to go on the bond provided he (Jasper) would give him a deed of his farm as security, and that he would cancel the deed if Jasper appeared for preliminary examination, and that after a short conversation this was agreed to, and the deed executed. He positively denies that there was any conversation had or contract made on the sidewalk before they entered the office. Hazen swears that when they returned, after starting for the jail, he told the officer that he wanted to see Mr. Jasper, and thereupon the officer withdrew to the distance of 25 or 30 feet, and that he then held a conversation with Jasper upon the sidewalk, and which no one else heard, wherein he offered to sign the bail bond provided Jasper would sell him the farm for $500 over and above the incumbrance thereon; that Jasper agreed thereto and thereupon they went into the office, and the deed was drawn. The officer, Mr. Ames, testified by deposition in this case for both parties. In the deposition taken on behalf of respondent, he says: "I am a messenger of the Northern Pacific Express Company. In the spring of 1885 I was deputy sheriff, and plaintiff was in my custody upon the charge of grand larceny. I accompanied him to the office of defendant, and was present and heard the conversation between them. Mr. Jasper asked Mr. Hazen to go on his bond for his appearance at the preliminary examination to be had before the justice of the peace. Hazen asked him what security he could give, and Jasper replied he could give him his farm as security, and his personal property. Hazen at first said he could not do

it; it was not security enough. I think we then started out for the jail, and had gone nearly a block, when Hazen called us back. He then told Jasper he had concluded to help him, if he would give him a deed of his farm, and a bill of sale of his personal property. We then went into Hazen's office, and Hazen drew up a deed. My understanding was that Jasper gave the deed to secure Hazen for going on his bail bond. To the best of my recolection, Hazen was to deed back the property to Jasper on his appearance for his examination. I could not state the conversation which took place at the time the deed was made out and signed by Jasper without reading it. I understood the deed was given simply as security for Jasper's appearance." In the deposition taken in behalf of appellant, he says: "My impression was that Hazen was to hold the land as security for the bail, but, of course, I cannot say positively. The conversation in the office was very short. I don't think it lasted over ten minutes. * * * I paid no particular attention. I was simply a disinterested listener." This evidence, taken together, shows the witness to be entirely disinterested, and speaks about as positively as to the purpose for which the instrument was executed as any honest man testifying six years after the occurrence, to a matter resting entirely in parole, would care to speak. One Davidson, a witness for respondent, who had charge of respondent's personal property that was subsequently turned over to appellant, testified that, when appellant presented the order for said property, he stated that he had leased the Jasper farm. This appellant denies. Mr. Clement, for appellant, testified that he was present, in one room or the other, in the office, while Mr. Jasper was there, and that he did not hear of any such contract made as that to which Jasper testified. He testified that, personally he did not know what the deal between the parties was. This is all the direct testimony bearing upon the point, and it tends strongly to establish the fact that the instrument was given as security.

There are, however, certain circumstances that greatly strengthen respondent's case: *First,* we notice the great discrepancy

between the value of the property and the alleged consideration. This circumstance, while not sufficient in itself to convert a deed absolute into a mortgage, is nevertheless entitled to much consideration. The trial court found this land to be worth $1,880 above the incumbrances thereon, and the finding has fair support in the evidence. It is true there is a conflict upon this point, but it is perfectly clear that Jasper considered the land worth at least $2,000 above the incumbrances. If we wish to properly understand Jasper's intention, we must view the transaction from his standpoint. This bond was for his appearance at the preliminary examination. It was given on March 20th. The examination was set for the 21st, and was actually held on the 22d. Now, it is scarcely conceivable that a man in Jasper's financial condition, having little else on earth, should sell property of the value of $2,000 for the sum of $500 simply to avoid one day's confinement in the county jail. Again, Hazen testifies that, for a portion of this consideration, he subsequently gave Jasper his promissory note for $225, maturing the 1st of November, 1885. Jasper denies any such transaction. Hazen admits that he has never paid the note, that it has never been presented for payment, and that he has never heard from it, in any form whatever. This circumstance has its significance. Very soon after Jasper reached the penitentiary, he caused a letter to be written to Mr. Hazen, asking about his business generally; how the crops were looking upon the farm, etc. In the fall following he caused another letter to be written to Mr. Hazen, in which he asked what kind of a crop had been raised, and whether it was sufficient to meet the incumbrance, and requesting that, if necessary, personal property be sold to save the farm, as he wanted a home when he came back, etc. Mr. Hazen admits that he received these letters, and says: "The letters showed, distinctively, that he treated the matter as if I was running the farm for him, in substance as he claims now." No answer whatever was ever made to either letter. It would be most unusual, most unprecedented presumption, for a man in Jasper's condition, and of his business experience, to thus boldly,

and without a word of explanation, excuse or extenuation, to assume the existence of certain conditions and circumstances which he knew did not exist, and which he knew that the party to whom he was writing also knew did not exist. It was also unusual for the man who received those letters to permit those statements, so important and vital, to stand unchallenged. It is not to be presumed that Mr. Hazen, during all those years, would have suffered Mr. Jasper to rest in the belief that he (Hazen) was running the farm for his (Jasper's) benefit, and that Jasper would have a home to which to return upon his release, if such were not the fact. Upon appellant's theory of the case, his silence becomes as inexplicable as respondent's presumption. Another circumstance of weight is the fact that, soon after his preliminary examination, Jasper executed and delivered to his neighbor, Davidson, who had charge of his personal property, a lease of the farm for that year. The lease was drawn by Jasper's attorney, and its execution is undisputed. It is true that Jasper subsequently made an arrangement with Hazen, by which Hazen was to have charge of the farm during Jasper's incarceration, and Jasper gave Hazen a written order on Davidson for the personal property, which Davidson delivered on demand, and it does not appear that he insisted upon the lease. But there is nothing whatever to indicate that the lease was not executed in perfect good faith. This was an overt act, committed a few days after the transaction which Hazen claims was a sale, by which Jasper notified Hazen, in no uncertain terms, that he still claimed to be the owner of the land. Nothing could be more inconsistent with the idea of a sale. It must be noticed, too, that if this transaction was a sale, as appellant claims, the whole contract was consummated within five minutes from the time an absolute sale was first mentioned, and appellant purchased a farm at the beginning of seeding time, with the building thereon filled with the personal effects, grain and feed belonging to respondent, and no arrangement whatever was made for removing respondent's property, and no time mentioned for delivering possession of the farm. This would be a very unusual course of business.

But there is one circumstance in the case that we were at first strongly inclined to think lent support to appellant's position. It is this: On the 23rd day of March, 1885,—the day after the preliminary examination, and while in jail,—respondent signed an order on appellant, in favor of his attorneys, in the following form: "Fargo, D. T., March 23rd, 1885. A. H. Hazen: Pay to the order of Barnett & McEldowney one hundred dollars from the purchase price of the north-east quarter Sec. 32, Tp. 143, range 50." The trial court finds that, when respondent signed the order, he did not know that the words, "from the purchase price," etc., were contained in it. But we did not really understand why respondent signed an order upon appellannt on any account, unless he supposed he had funds in appellant's hands, and there is no suggestion of any source from which such funds could come, except as the purchase price of the land. On consideration, we doubt there being any force in the point. The order was not drawn at the suggestion, request, or with the knowledge of respondent. It was draw by appellant himself, and given to the attorneys, with the statement, in effect, that he would pay the money on it. The attorneys presented it to respondent, with a similar statement. ·Respondent was in jail, awaiting indictment for a felony. He could not procure bail, and was without money. To a certain extent, he was bound down. Naturally, he was very anxious to receive the best services of his attorneys, and, to that end, anxious to meet their requirements for fees. The opportunity was presented to him, and, if he stopped to think of the motives that influenced appellant, (which is doubtful,) he might not unreasonably conclude that since appellant had the deed in his possession, which he could refuse to return until his advances were repaid, therefore he had concluded to lend aid to that extent, appellant having already refused to go upon the enlarged bail bond. The trial court finds that this order was used by the appellant fraudulently, and with intent to cheat and defraud respondent out of his land. There is a basis for this finding. The form of the order is unique. It suggests a studied design to accomplish some object. If appellant's intention was, from the first, to defraud respondent, it can

readily be seen that this order was a most adroit instrument, and, of all others, most likely to prove effective. As a probative document, the order is two-edged, and the least that can be said is that appellant is not in position to claim anything from it. It will thus be seen that there was much in the testimony and in the surrounding facts and circumstances to corroborate Mr. Jasper. There was little or nothing in the testimony or the surrounding facts and circumstances to corroborate Mr. Hazen. The principals to the transaction, with equal means of knowledge, testified in direct opposition, and with a fullness of detail that precludes all idea of mistake or defective memory. Ingenuity cannot reconcile their testimony, and the broad mantle of charity cannot conceal the fact that one or the other was willfully falsifying. It became the delicate but imperative duty of the chancellor to say which. His decision in favor of either party necessarily threw the opprobrium upon the other. By his finding he has said appellant's testimony was not entitled to credence. In view of his superior advantages in personal observation of the witnesses, and in view of the probability or improbability of their respective stories, can we say the chancellor erred in so holding? Clearly not. When appellant's testimony is disregarded, the defense is without support, and falls to the ground. Upon full consideration of all the testimony bearing upon this branch of the case, we are agreed that the evidence was sufficiently clear, convincing, and satisfactory to fully warrant the findings of the chancellor.

Judgment affirmed. All concur.

(58 N. W. Rep. 454.)

NOTE—Questions of fact will not be tried *de novo* in the Supreme Court. *Klein* v. *Valerius*, 57 N. W. Rep. 1112, S. C. 22, L. R. A. 609.