## Nicolls *versus* McDonald.

1. A deed (made prior to the Act of June 8th 1881, P. L. 84), purporting to be an absolute conveyance, may be proved by parol evidence to be merely security for a debt or liability. The grantor in such case may bring a bill in equity for a re-conveyance, or an action of ejectment, but each form of procedure is subject to the same equitable principles.

2. In order to convert a deed absolute on its face into a mortgage by parol evidence, such evidence must be clear, explicit and unequivocal. Subsequent admissions and declarations of the alleged mortgagee only, are not sufficient ; an agreement must be proved which is substantially contemporaneous with the execution and delivery of the deed.

3. On the trial of an action of ejectment founded on an equitable title, the judge must consider and weigh the facts for himself, and if the evidence does not make out a case which would induce a chancellor to decree a conveyance he should give the jury binding instructions to that effect.

4. The evidence in this case held insufficient to warrant the court in submitting to the jury the question whether a deed absolute on its face was in reality a mortgage.

November 27th 1882. Before Sharswood, C. J., Mercur, Gordon, Paxson, Trunkey, Sterrett and Green, JJ.

Error to the Court of Common Pleas of *Crawford county:* Of July Term 1882, No. 84.

Ejectment, by John McDonald against Seneca Nicolls, to recover possession of about seventy-four acres of land in Beaver township. Plea, the general issue.

On the trial, before Church, P. J., the plaintiff, John McDonald, was admitted to be the common source of title. The plaintiff offered in evidence his own deed to Seneca Nicolls, the defendant, dated May 23rd 1879, for two pieces of land, one of 74 acres (the premises in suit) and the other of 80 acres which had afterwards been conveyed back to plaintiff by defendant : also the writ of ejectment and return, showing the defendant's possession of the first tract.

The plaintiff at the time of his conveyance was confined in prison for non-payment of a fine imposed upon him for selling liquor without a license. He desired Nicolls to become his bail, pay his fine and certain debts, and in consideration therefor made an agreement with him as to which plaintiff testified as follows : "Nicolls came down to the jail and told me he wanted a deed of all my property. . . . . I told him I did not want to give a deed : I will give you a mortgage.

Q. What did he say he would do for you?

A. He would help me out of this.

Q. He would help you out ?

[Nicolls v. McDonald.]

A. He wanted a deed and I would not give it to him.

Q. What did he want the deed for?

A. He wanted it to secure him. I told him if I was out of jail I could soon pay my debts, if at liberty. He went my bail; when he went my bail he went over to Richmond's; I went and he went over to Richmond's; they had a deed made out, and Col. Richmond told me that this deed would only be for security. When I went over there he said it was no better than collateral security, and when this debt was paid the property should be conveyed to me back again.

Q. I wish you to state if Nicolls gave you anything for that land at that time?

Witness.—No, sir; he had a piece of paper; I do not know what it was, and Richmond kept it.

Q. Has he given you anything since that conveyance for that land?

A. No, sir.

Q. I wish you to state if since that conveyance you have paid him all he has paid for you?

A. Every dollar.

Q. Have you paid all your other debts besides?

A. All these debts that was against that, and about six hundred dollars besides.

Q. I wish you to state how long Nicolls has been in possession of this seventy-four acres for which we are now suing?

A. Two years.

Q. When did he take possession?

A. He took possession in the fall of 1879 sometime—I could not tell.

Q. There are two pieces of land evidenced in this deed, the piece of eighty acres. I wish you to state if that was the property you lived on?

A. That is the property I lived on.

Q. How much was that property worth at the time the deed was made to Nicolls?

A. I was offered three thousand dollars.

Q. How much was the seventy four acres worth?

A. I was offered nineteen hundred dollars.

Q. Was it worth that?

A. It was worth that to me.

Q. Do you believe the other was worth three thousand dollars?

A. Yes, sir.

A. What is the rental value of this seventy-four acres—how much a year?

A. One hundred dollars a year.

Q. I wish you to state if you have received from Seneca Nicolls anything for this farm he is trying to hold.

A. Not one dollar.

Q. That you have not paid him back?

A. I have paid him up every dollar he has demanded.

The plaintiff's testimony as to the value of the property was corroborated by other testimony.

C. W. Greenfield testified as follows: I happened to be at Nicolls' house. I went to see the doctor on professional business. Mr. Nicolls said he had gone off with a herse and buggy that was then under levy, and that Nicolls had gone the doctor's bail to get him out of jail, had become responsible for a number of debts, he did not say how much; I said: "Nicolls, what will you do if he don't come back with the buggy." He says, "I have got more than enough in my hands to secure me." He told me he had a deed of the real estate, so he would not lose anything, if the doctor did not come back. That is the most I know of.

Q. What was this deed given for?

A. I understood at that time he had taken a deed of that real estate to secure him on the debts he had become responsible for and the bail he had gone.

Q. When was that, what time of year?

A. It was in the spring of the year, just a few days after the doctor had got out of jail.

Mrs. C. W. Greenfield's evidence was to the same effect.

The defendant's own testimony as to the agreement was that: "Mr. Dean and me went into the jail to see the doctor; saw the doctor; he told me they had put him into jail for ten dollars and fined him ten dollars and they arrested him again for selling liquor and he wanted me to go his bail. "Doctor, I would rather not; you are involved into too much such things." Well, he insisted on it. Says he: "I will secure you." "How?" "I will secure you by the places." "Doctor, there is too much liens against your places; I don't want to have anything to do with them." "There ain't nothing against them," he says. "Why, doctor, I know there is; I know there is the Wormald and the Graham claims against them; I know several." Wouldn't I go security? "No, if I was to go your security I would buy your farm, for I would have to pay off the liens before my security would be good." He insisted on me going his security. I told him I would buy the farm out. "Will you give me the farm out; will you give me a chance to redeem them?" "No, I will buy just as I buy from anybody else." Says he: "What will you give me?" I thought of it awhile. "For the two farms I will give you sixteen hundred dollars."

Dean, who was present at the conversation testified to the same effect.

After having taken searches against the property the deed was made to Nicolls on the 23d of May 1879 and the following agreement was executed at the same time:

" Whereas Seneca Nicolls has purchased two farms in Beaver township of John McDonald. Now in consideration and full satisfaction of said purchase, said Nicolls agrees to pay the fine and costs in the Commonwealth *v.* McDonald, No. 11 May Session 1879. The fees and charges of H. L. Richmond & Sons and the following lien judgments (six judgments specified) also to receipt in full to him for his indebtedness to him, and to give him his note for $350, payable in two years, with the understanding that any liability the said Seneca may incur by becoming bail for the said McDonald's appearance at next court shall be a payment on said note.            SENECA NICOLLS.

May 23d 1879.

In presence of H. L. RICHMOND.

In accordance with this agreement the following note was given for the balance of the consideration.

For value received I promise to pay John McDonald three hundred and fifty dollars, two years after date, and it is understood that any liability I may incur by becoming bail for said McDonald's appearance at the next term of court, or on any other account, shall be a payment on this obligation.

May 23d, 1879.                      SENECA NICOLLS.

In presence of H. L. RICHMOND.

Mr. Richmond, who prepared these papers, testified that " I drew up the contract, and the doctor came to my office after I had drawn them up ; he may have been alone, but my recollection is some officer of the jail brought him to the office ; I read to him the papers and explained them to him ; and these are the papers and he understood them ; I not only read them but explained them and their purport.

Q. State whether the doctor said anything at the time about selling the land mentioned in the deed to Nicolls—whether it was an absolute sale ?

A. I do not recollect anything then, because that was not the question ; but sometime after the doctor was out of jail—I had been his counsel in those matters, and I suppose that is the reason he came to me—he was in town, and was at my office with regard to some of his matters undetermined, and he said he would like, if he could, to buy back the eighty acres ; it was what he called the original homestead ; it had been the property of his wife, who had been some time deceased ; and wanted to know what I thought, whether Nicolls would re-sell to him ; I

[Nicolls *v.* McDonald.]

told him when he was ready to pay Nicolls what he had paid or assumed to pay, to come to me and let me know ; I had also, for a good many years, been attorney for Nicolls, and thought if any one could induce Nicolls to reconvey the property to him, I could ; when he was ready for that arrangement to see me, but he never saw me about it afterwards.

The defendant requested the court to charge : " That under all the evidence in this case plaintiff cannot recover."

The court refused so to charge (1st assignment of error), and after reviewing the evidence as above stated, charged as follows : If you find that this was really and truly a mortgage under the evidence in the case, and under the instructions and definitions we have given you of what constitutes a parol mortgage, you will find for the plaintiff for the land described in the writ, if the defendant has been repaid his advances to the plaintiff. If you find it really a deed, as it professes to be, absolute on its face, and not a mortgage, by any agreement or understanding between the parties at the time and contemporaneous with the giving of the deed, then you find for the defendant.

Verdict for plaintiff and judgment thereon. The defendant took this writ of error, assigning for error, inter alia, the refusal of his point as above.

*H. L. Richmond & Sons*, for plaintiff in error.—Under the evidence in this case, it should not have gone to the jury : Moore *v.* Small, 7 Harris 468 ; Todd *v.* Campbell, 8 Casey 252. To convert an absolute deed into a mortgage, the proof must be clear, explicit and unequivocal : Plumer *v.* Guthrie, 26 P. F. Smith 441 ; Todd *v.* Campbell, supra ; De France *v.* De France, 10 Casey 393.

*J. B. Brawley*, for defendant in error.—The evidence showed that the purpose of the conveyance was simply to secure the defendant. All the circumstances of the transaction are inquired into in a court of chancery : Kerr *v.* Gilmore, 6 Watts 408 ; Sweetzer's Appeal, 21 P. F. Smith 273 ; Haines *v.* Thomson, 20 P. F. Smith 439. The fact that the money paid by the grantee was not a fair price for an absolute purchase of the estate, tends to show that the transaction was a mortgage : Kerr *v.* Gilmore, supra.

Mr. Justice MERCUR delivered the opinion of the court, December 30th 1882.

This is an attempt by the plaintiff below to recover land against a deed made by himself, absolute on its face. He alleges no fraud or mistake in its execution; but claims although apparently indefeasable, yet it was executed under an agreement

which in law makes it a mortgage. There is no attempt to prove the alleged defeasance by any instrument in writing; but wholly by parol evidence. The rule is well settled in Pennsylvania prior to the Act of 1881, that a grantor may prove by parol that his deed which purports to be a conveyance is in reality only security for a debt or liability. When the attempt is made he claims as a mortgagor seeking to redeem. Although the action may be ejectment in form, yet in substance it is a bill in equity to compel a reconveyance of the land from the mortgagee in possession. Each form of procedure is subject to the same equitable principles. If the parol evidence be insufficient to move a chancellor to decree a reconveyance it is insufficient to justify a recovery in ejectment. In each case the judge administers equitable powers. It is in the discretion of a chancellor whether he will send an issue to the jury. When sent, their province is to aid him in ascertaining the facts; but their verdict is advisory only. It is not conclusive on him. He is still judge both of the equity and of the facts. So on the trial of an action of ejectment, founded on an equitable title, it is the duty of the judge to consider and to weigh the facts for himself. They must be proved to his satisfaction as well as to the satisfaction of the jury. If he be of opinion that the evidence does not make out a case which would induce a chancellor to decree a conveyance, it is his duty to give the jury binding instructions to that effect: Brawdy *v.* Brawdy, 7 Barr 157; Todd *v.* Campbell et al., 8 Casey 250. When a party sets up title against a deed absolute in its terms and seeks to convert it into a mortgage the proof of the alleged agreement necessary to change its character must be clear, explicit and unequivocal. It should not rest on the subsequent admissions and declarations of the alleged mortgagee only; but must establish an agreement substantially cotemporaneous with the execution and delivery of the deed. Less than this will defeat the wise provisions of the statute of frauds: Plumer *v.* Guthrie, 26 P. F. Smith 441. It is not sufficient that the jury may be convinced on the evidence given; but the question is, ought they to have been convinced?

It appears McDonald had been convicted of selling liquor contrary to law, and a fine imposed on him, which was unpaid. He was again arrested, charged with a like offence, and desired Nicolls to pay the fine, and become bail for his appearance on the latter charge. He was otherwise indebted, and owned two pieces of land. Some agreement was entered into whereby Nicolls was to make some payments and assume liabilities, and take a conveyance of the lands. The main contention is whether the conveyance was intended as an absolute sale and purchase of the lands, or as a mortgage only.

McDonald testified that Nicolls asked for a deed; but he refused and said he would give a mortgage; and when the deed was executed a few days thereafter, he was told by Mr. Richmond who drew it, that it would be for security only, and when the debt was paid the property should be reconveyed to him.

George Dean, a tenant of McDonald and living on the lands, was present and heard the agreement. Both he and Nicolls positively and unequivocally contradict McDonald, and swear the sale was to be absolute. Each swears that Nicolls absolutely refused to assume any obligation to accept the lands as security. He declared if he took the land he must take it just as he would buy from any other person, and would not give McDonald any chance to redeem it. The latter then asked how much he would give. Nicolls replied sixteen hundred dollars and not a dollar more. He concluded to accept it. The execution of the deed was postponed until the records should be searched. Nicolls was to assume certain obligations and give his note for the residue, amounting to $350. The writings were prepared by Mr. Richmond, a reputable member of the bar, a few days thereafter, and were executed in his presence on the 23d May 1879. They were three in number to wit: the deed from McDonald to Nicolls, and an agreement and note of the latter to the former. The agreement, after reciting whereas Nicolls had purchased two several farms of McDonald, proceeded to say: "Now in consideration and full satisfaction of said purchase" said Nicolls agreed to pay the fine and costs in the case of the Commonwealth *v.* McDonald; the fees and charges of Richmond & Sons; six lien judgments specified; to receipt McDonald's indebtedness to him, and to give him his note for $350, payable in two years, "with the understanding that any liability said Nicolls may incur by becoming bail for McDonald's appearance at the next court shall be a payment on said note." The note of $350, given by Nicolls at the same time, recited the same "understanding." Mr. Richmond testified: "I read to him (McDonald) the papers and explained them to him; and these are the papers and he understood them; I not only read them, but explained them and their purport." Thus not only is the evidence of Richmond in conflict with that of McDonald as to what occurred at the execution of the papers; but Nicholls also swears that there was no agreement in any way or form, at the making of the deed, that the land should be reconveyed to McDonald. The note and agreement were left in the custody of Mr. Richmond, when the writings were executed.

The defendant in error seeks to assail by his own evidence not only the absolute character of the deed, but to contradict the written contract and note executed by Nicolls "in consideration and full satisfaction of said purchase." The vendor is the

only witness who testifies, that either before, or at the time of, the execution of the deed, there was any agreement whereby it was to be given or accepted as a mortgage. The vendee and another witness present at the alleged parol agreement, and the vendee and conveyancer present at the execution of the writings, each not only expressly and positively denies any such understanding, but swears to an agreement in entire harmony with all the written instruments. Thus the material facts averred by the vendor are not denied by the vendee alone, but also by another witness present at the agreement and at the execution of the deed. The evidence of what occurred contemporaneously with the making of the agreement and the execution of the deed is overwhelmingly against the version now given by the vendor. It is very clear, upon all the evidence referred to, that no chancellor should reform the deed or change its absolute character.

It is, however, contended by the defendant in error that there is other evidence tending to sustain his view. There is some; in fact the value of the property appears to have been much more than $1,600; and there is some evidence of subsequent admissions of the vendee indicating that he held it as security. Yet all these are overthrown by the declarations and acts of the vendor. Some of them may be stated. A few days after the execution of the deed the vendor and the vendee went together to the farm on which Dean was residing, and stated to him that Nicolls had purchased it, and Dean was thereafter to be his tenant, and that McDonald was to have nothing more to do with the farm; that Dean must look to, and transact his business with Nicolls. The vendor further saying to Dean that he had sold the property to Nicolls as they had talked on the occasion when he was present. Thenceforth for a year Dean did continue in possession as the tenant of Nicolls without any interference or molestation on the part of McDonald.

Mr. Richmond testifies that some time after the execution of the deed, McDonald said to him he would like to "buy back" one piece of the land, called the homestead, and asked if he thought Nicolls would sell it to him. At that time he made no allegation or claim of any right to redeem the land.

On the 20th September following, the parties made a written agreement whereby Nicolls agreed to sell and McDonald to buy the homestead lot. On that day they appear to have settled all purchase-money due from Nicolls on his note and contract of 23d May. McDonald gave a written order on Richmond requesting him to " deliver to S. Nicolls one note, in favor of John McDonald, for three hundred and fifty dollars, against S. Nicolls; also, one other paper with statement for purchase,

and payments on farms for which I have received satisfaction this day, and also my books and receipts."

There is evidence of some other admissions by each party. On the one side indicating the original transaction was considered an absolute purchase, and on the other side that the transfer was merely as security ; but they are wholly insufficient to destroy the force and effect of the testimony to which we have referred.

The unsatisfactory and strongly contradicted evidence of the vendor, as to alleged facts contemporaneous with the making of the deed, is still further weakened by his subsequent acts. The operation of the statute of frauds cannot be suspended, nor a title to real estate by deed absolute on its face be destroyed by such evidence.    The learned judge should have given binding instructions to that effect, and have affirmed the point covered by the first specification of error.    It is therefore unnecessary to consider the remaining specifications.

Judgment reversed.